UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROSEMARY QUINN and ALAN
DUCORSKY, on behalf of themselves and
all others similarly situated,

Plaintiffs,

v.

WALGREEN CO.

Defendant.

Civil Action No. _____

CLASS ACTION COMPLAINT



JUDGE BRICCETTI

Plaintiffs, by and through their counsel, Meiselman, Denlea, Packman, Carton & Eberz

P.C., respectfully file this Class Action Complaint on behalf of themselves and two classes of

similarly-situated individuals who have purchased, in New York State and Connecticut,

respectively, a Walgreen Co. ("Walgreens") joint supplement containing glucosamine,

chondroitin and/or other ingredients that were falsely labeled and represented to "rebuild

cartilage."

## NATURE OF THE CASE

1.      It is an inescapable but unfortunate fact that our joints degenerate as we get older.

The basic human compulsion to regain what has been lost, coupled with the acute pain that can

be associated with arthritic or otherwise damaged joints, has created an opportunity for

unscrupulous marketers to peddle joint-relief supplements with the false and unsubstantiated, but

nonetheless enticing, promise to "rebuild" cartilage.

2.      One such marketer is Walgreens, which sells a line of glucosamine and

chondroitin supplements with the false promise and deceptive warranty that its products "rebuild

cartilage." As Walgreens is fully aware, however, it is physically and biologically impossible to "rebuild" cartilage that has been lost or damaged.

3.      Walgreens sells its products throughout the States of New York and Connecticut by callously taking advantage of consumers' reasonable but unattainable desire to reverse the damage done to their cartilage. This suit seeks redress on behalf of all consumers in New York and in Connecticut that purchased a Walgreens glucosamine and chondroitin supplement from October 2006 to the present that were sold with a label promising that the product would "rebuild cartilage."

## PARTIES

4.      Plaintiff Rosemary Quinn resides in Katonah, New York in Westchester County. Approximately a year prior to the filing of this action, Plaintiff Quinn purchased a Walgreens dietary supplement containing glucosamine and chondroitin at a Walgreens location in Scarsdale, New York that included the prominent representation on the front of the label that the supplement would "rebuild cartilage." Approximately a year prior to the filing of this action, Plaintiff Quinn also purchased a Walgreens dietary supplement containing glucosamine and chondroitin at a Walgreens location in Danbury, Connecticut, that included the prominent representation on the front of the label that the supplement would "rebuild cartilage." In both instances, Ms. Quinn read and reviewed that representation on the label when she purchased the supplements. Ms. Quinn subsequently consumed Walgreens' glucosamine and chondroitin supplement, but her cartilage was not rebuilt.

5.      Plaintiff Alan Ducorsky resides in Island Park, New York in Nassau County. In or around the fall of 2011, Plaintiff Ducorsky purchased a Walgreens dietary supplement containing glucosamine and chondroitin at a Walgreens location in New York that included the

2

prominent representation on the front of the label that the supplement would "rebuild cartilage." Mr. Ducorsky read and reviewed that representation on the label when he purchased the supplement. Mr. Ducorsky subsequently consumed Walgreens' glucosamine and chondroitin supplement, but his cartilage was not rebuilt.

6.      Defendant Walgreen Co. is an Illinois corporation with its principal place of business in Deerfield, Illinois.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). Jurisdiction is proper because (1) the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interests and costs and (2) the named Plaintiffs and the Defendant are citizens of different states. 28 U.S.C. § 1332(d)(2)(A).

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred within this judicial district, and because Defendant has marketed and sold the products at issue in this action within this judicial district and has done business within this judicial district.

## GENERAL ALLEGATIONS

9.      Millions of adults in the United States live with arthritis, a disease involving the breakdown of cartilage in joints, or other orthopedic disorders in which cartilage in joints is broken down over time and causes bones in those joints to grind against each other. Cartilage normally protects a joint, allowing it to move smoothly, and also absorbs shock when pressure is placed on the joint. Without normal amounts of cartilage, the bones in the joint rub together, causing pain, swelling and stiffness. These conditions are often extremely painful and result in limitations on an individual's range of motion, and most often impact elderly persons.

3

10.    In response to the desperation of consumers suffering from painful and debilitating arthritic and other orthopedic conditions, dietary supplement manufacturers and retailers have rolled out a variety of products promising joint relief from chronic pain.  In a push for more market share, some manufacturers and retailers have not been content to advertise pain relief alone, and have been making more and more outlandish promises to consumers, including the promise that glucosamine and chondroitin supplements can "rebuild cartilage."

11.    Defendant Walgreens, the seller of a wide variety of vitamin, nutritional and dietary supplement products, is one such company.  One of Walgreens' most successful product lines is promoted as a joint supplement that contains glucosamine and chondroitin.  These joint supplements are sold at Walgreens stores throughout New York, Connecticut and nationwide using Walgreens labels that prominently claim, among other things, to "rebuild cartilage." Walgreens also maintains a website devoted to marketing its products (www.walgreens.com), where it maintains a web page for each of its glucosamine and chondroitin products.  In the textual portion of the page for each product, the claim prominently appears that the products "rebuild cartilage."

12.    Glucosamine is an amino sugar present in cartilage.  Glucosamine supplements are produced commercially from crustacean exoskeletons, and are one of the most common, non-vitamin dietary supplements sold in the United States.  Chondroitin is a sulfated glycosaminoglygan composed of a chain of alternating sugars.  Chondroitin sulfate is a structural component of cartilage and provides resistance to compression.  There is no competent scientific evidence that either of these ingredients, or any other ingredient, contained in Walgreens' dietary supplements, alone or in combination, are capable of rebuilding cartilage that has been damaged or destroyed.

4

13.    Walgreens' statement that its products "rebuild cartilage" is false and misleading. In fact, there is no scientifically sound study demonstrating that Walgreens' products can rebuild cartilage.  To the contrary, as numerous studies have confirmed, neither glucosamine, chondroitin, or any other supplements or ingredients actually rebuild cartilage:

a.    In February 2004, a Supplement to the American Journal of Orthopedics published an article entitled "Restoring Articular Cartilage in the Knee."  The authors concluded that adult cartilage cannot be regenerated because it is not vascularized, meaning that blood does not flow to damaged cartilage which prevents any mechanism for rebuilding.

b.    In February 2006, the New England Journal of Medicine published a report on a double blind study addressing in part the efficacy of ingesting glucosamine hydrochloride 1500mg.  Clegg, et al.  Glucosamine, Chondroitin Sulfate, and the Two in Combination for Painful Knee Osteoarthritis.  New Eng. J. Med. 354:795-808 (Feb. 2006).  The study concluded that there was no showing that the supplement was effective in treating osteoarthritis.

c.    In February 2008, the Annals of Internal Medicine published a study entitled, "Effect of Glucosamine Sulfate on Hip Osteoarthritis:  a Randomized Trial."  Annals of Internal Medicine 2008 Feb 19;148(4): 268-277.  The article published the results of a study which examined whether glucosamine sulfate has an effect on the symptoms and structural progression of hip osteoarthritis during two years of treatment; the conclusion reached from the study was that glucosamine sulfate was no

5

better than placebo in reducing symptoms and progression of hip

osteoarthritis.

    d.      In October 2008, the American College of Rheumatology's

Journal, Arthritis & Rheumatism published a report on a double blind

study conducted at multiple centers in the United States examining joint

space width loss with radiograph films in patients who were treated with

glucosamine hydrochloride. The authors concluded that after two years of

treatment with this supplement, the treatment did not demonstrate a

clinically important difference in joint space width loss. Sawitzke et al.,

Glucosamine for Pain in Osteoarthritis: Why do Trial Results Differ?,

Artritis Rheum., 58:3183-3191 (2008).

    e.      In March 2009, Harvard Medical School published a study

conclusively proving that the ingestion of glucosamine could not affect the

growth of cartilage. The study took note of the foregoing 2006 and 2008

studies, which "cast considerable doubt" upon the value of glucosamine.

The authors went on to conduct an independent study of subjects ingesting

1500 mg of glucosamine, and proved that only trace amounts of

glucosamine entered the human serum, far below any amount that could

possibly affect cartilage. Moreover, even those trace amounts were

present only for a few hours after ingestion. The authors noted that a 1986

study had found no glucosamine in human plasma after ingestion of four

times the usual 1500 mg of glucosamine chloride or sulphate. Silbert,

6

Dietary Glucosamine Under Question, Glycobiology 19(6):564-567 (2009).

f.      In April 2009, the Journal of Orthopaedic Surgery published an article entitled, "Review Article: Glucosamine." The article's authors concluded that, based on their literature review, there was "little or no evidence" to suggest that glucosamine was superior to a placebo even in slowing down cartilage deterioration, much less rebuilding it. Kirkham, et al., Review Article: Glucosamine, Journal of Orthopedic Surgery, 17(1): 72-6 (2009).

g.      In October 2008, the journal Arthritis and Rheumatism published an article entitled, "The Effect of Glucosamine and/or Chondroitin Sulfate on the Progression of Knee Osteoarthritis." The authors reported on the results of a 24-month, double-blind, placebo-controlled study, which demonstrated that there were no statistically significant differences in progressive loss of joint space width for subjects taking glucosamine and chondroitin versus placebos. Sawitzke, et al., The Effect of Glucosamine and/or Chondroitin Sulfate on the Progression of Knee Osteoarthritis, Arthritis and Rheumatism, 58(10): 3183-3191 (2008).

h.      In June 2011, the Journal of Pharmacy & Pharmaceutical Sciences published an article entitled, "The Glucosamine Controversy; A Pharmacokinetic Issue." The authors concluded that regardless of the formulation used, no or marginal beneficial effects were observed as a result of low glucosamine bioavailability. Aghazadeh-Habashi and

Jamali, The Glucosamine Controversy; A Pharmacokinetic Issue, Journal

of Pharmacy & Pharmaceutical Sciences, 14(2): 264-273 (2011).

14.     To date, there are only two studies, both of which are more than a decade old,

purporting to claim that the ingestion of glucosamine can affect the growth or deterioration of

cartilage, both sponsored by a glucosamine supplement manufacturer: Pavelka et. al.

Glucosamine Sulfate Use and Delay of Progression of Knee Osteoarthritis, Arch. Intern. Med.,

162: 2113-2123 (2002); Reginster et. al. Long-term Effects of Glucosamine Sulphate On

Osteoarthritis Progress: A Randomised, Placebo-Controlled Clinical Trial, Lancet, 357: 251-6

(2001).  As noted in the April 2009 Journal of Orthopaedic Surgery article, the methodologies in

those studies had "inherently poor reproducibility," and even minor changes in posture by the

subjects during scans could cause false apparent changes in cartilage.  The authors of the Journal

of Orthopaedic Surgery article explained the manufacturer-sponsored studies' findings by noting

that "industry-sponsored trials report positive effects more often than do nonsponsored trials and

more find pro-industry results."  No reliable scientific medical study has shown that glucosamine

and chondroitin, alone or in combination, have a structure modifying effect that will rebuild

cartilage that has broken down or worn away.

15.     Walgreens thus sells its glucosamine and chondroitin line of products without any

competent or reliable scientific evidence that glucosamine, chondroitin and/or other ingredients

will rebuild cartilage.  Walgreens thus lacks a reasonable basis to represent to consumers that its

products rebuild cartilage.  In fact, it is medically impossible to rebuild cartilage that has been

damaged or destroyed simply by taking glucosamine and/or chondroitin supplements, however

formulated.

16.     Plaintiffs purchased and consumed Walgreens glucosamine and chondroitin supplements because they believed, based upon the label, that they would rebuild the cartilage in their joints. Their belief that the product would "rebuild cartilage" in their joints was reasonable because Walgreens, as a retailer and distributor of dietary supplements throughout the United States, has superior knowledge, skill and expertise (as compared to Plaintiffs) to appreciate the truth or falsity of the statement that the product can "rebuild cartilage." Plaintiffs reasonably relied upon the statement that the supplements would "rebuild cartilage" when they purchased the product.

17.     Plaintiffs would not have bought Walgreens glucosamine and chondroitin supplements if they had known that they would not "rebuild cartilage."
The Walgreens "Glucosamine Chondroitin Complex Triple Strength" supplement that Plaintiffs purchased did not and could not rebuild their cartilage.

18.     Plaintiffs were injured because they purchased a product that was incapable of performing as promised. Moreover, Defendant is able to, and does, charge more for its glucosamine products than it would otherwise be able to because Walgreens represents that its supplements will "rebuild cartilage." In addition, this misrepresentation allows Walgreens to charge more for its supplements than other brands containing similar amounts of glucosamine, chondroitin and the other ingredients contained in Defendant's joint supplements. This price premium is a direct result of Defendant's misrepresentation that its product will "rebuild cartilage."

## CLASS ACTION ALLEGATIONS

19.     Plaintiffs bring this action on their own behalf and additionally, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of a class all persons who purchased in the

9

State of New York a Walgreens glucosamine and/or chondroitin product with the representation that it "rebuild[s] cartilage" on the label during the period of October 2006 through the present (the "New York Class"). Excluded from the New York Class are the Defendant and any parent, subsidiary, or affiliate of the Defendant.

20.     Plaintiff Quinn additionally brings this action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of a class of all persons who purchased in the State of Connecticut a Walgreens glucosamine and/or chondroitin product with the representation that it "rebuild[s] cartilage" on the label during the period of October 2006 through the present (the "Connecticut Class"). Excluded from the Connecticut Class are the Defendant and any parent, subsidiary, or affiliate of the Defendant.

21.     This action is brought as a class action for the following reasons:

a.      The New York and Connecticut Classes consist of tens of thousands of persons and are therefore so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

b.      There are questions of law or fact common to the Classes which predominate over any questions affecting only individual members, including:

i.       whether Defendant violated N.Y. G.B.L § 349 for the New York Class;

ii.      whether Defendant violated Conn. Gen. Stat. Ann. § 42-110a *et seq.* for the Connecticut Class

iii.     whether Defendant breached its express warranty with Plaintiffs and the Classes by representing that its products "rebuild cartilage" when they do not;

      iv.        whether Defendant is being unjustly enriched by its misleading and deceptive misrepresentations;

      v.        whether Defendant's claim that its products "rebuild cartilage" is substantiated or supported by any valid scientific evidence;

      vi.        whether Plaintiffs and the Classes have sustained damages and, if so, the proper measure thereof; and

      vii.        whether Defendant should be enjoined from continuing its deceptive conduct;

c.      The claims asserted by Plaintiffs are typical of the claims of the members of the Classes;

d.      Plaintiffs will fairly and adequately protect the interests of the Classes, and Plaintiffs have retained attorneys experienced in class and complex litigation, including class action litigation involving state statutes protecting consumers from deceptive acts;

e.      Prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendant;

f.      Defendant has acted on grounds that apply generally to the Classes, namely promoting its glucosamine and chondroitin products as supplements that "rebuild cartilage," so that final injunctive relief prohibiting Defendant from continuing its deceptive practices is appropriate with respect to the Classes as a whole; and

g.      A class action is superior to other available methods for the fair and efficient adjudication of the controversy, for at least the following reasons:

i.      Absent a class action, Class members as a practical matter will be unable to obtain redress, Defendant's violations of its legal obligations will continue without remedy, additional consumers will be harmed, and Walgreens will continue to retain its ill-gotten gains;

ii.      It would be a substantial hardship for most individual members of the Classes if they were forced to prosecute individual actions;

iii.      When the liability of Defendant has been adjudicated, the Court will be able to determine the claims of all members of the classes;

iv.      A class action will permit an orderly and expeditious administration of Class claims and foster economies of time, effort, and expense;

v.      The lawsuit presents no difficulties that would impede its management by the Court as a class action; and

vi.      Defendant has acted on grounds generally applicable to Class members, making class-wide monetary and injunctive relief appropriate.

## FIRST CAUSE OF ACTION
### (Violation of N.Y. General Business Law § 349 on Behalf of the New York Class)

22.      Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1-21 above as if fully set forth herein.

23.      Through its conduct described above, Defendant has engaged in deceptive acts and practices that resulted in injury to Plaintiffs and the other members of the New York Class.

24.      Representing that its glucosamine and chondroitin supplements "rebuild cartilage" when they are incapable of doing so as a matter of medical and scientific fact and when there is no competent or reliable scientific evidence substantiating that claim, is deceptive, and has the

capacity, tendency and effect of deceiving reasonable consumers who purchase the products. Reasonable consumers would believe that Walgreens' products "rebuild cartilage" based upon Defendant's misrepresentations that they could do so.

25.     Defendant's unfair or deceptive practices are a willing and knowing violation of N.Y. General Business Law § 349 because Defendant knew, or should have known, that its products are incapable as a matter of scientific and medical fact of rebuilding cartilage and that its representation that its products "rebuild cartilage" was not substantiated or supported by competent and reliable scientific evidence.

26.     Plaintiffs and the New York Class have suffered an ascertainable loss of money or property as a result of Defendant's actions.  Plaintiffs and the New York Class have been damaged in the amount of the purchase prices for Walgreens' products that they paid.  Plaintiffs and the New York Class have also or alternatively been damaged because Walgreens is able to and does charge more for the products it advertises as being capable of rebuilding cartilage, and independently because Plaintiff and members of the Class paid more for Defendant's products than for other products containing the same or similar ingredients that do not represent that they will "rebuild cartilage."

27.     By reason of the foregoing, Defendant has willfully and knowingly violated N.Y. Gen. Bus. Law § 349, and should be enjoined from representing that its products "rebuild" cartilage.  Defendant is also liable to Plaintiffs and the other members of the New York Class for the damages that they have suffered as a result of Defendant's actions, such damages to be determined at trial but not less than $50.00 for each purchase of Defendant's products, such damages to be trebled, plus attorneys' fees.

## SECOND CAUSE OF ACTION
### (Violation of Conn. Gen. Stat. Ann. § 42-110a *et seq.* on Behalf of the Connecticut Class)

28.     Plaintiff Quinn repeats and re-alleges the allegations contained in Paragraphs 1-21 above as if fully set forth herein.

29.     Through its conduct described above, Defendant has engaged in deceptive and unfair acts and practices in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. Ann. § 42-110a *et seq.* ("CUTPA").

30.     Plaintiff Quinn and the Connecticut Class have suffered an ascertainable and substantial loss of money as a result of Defendant's actions, which could not be readily or easily avoided.  Plaintiff Quinn and the Connecticut Class have been damaged in the amount of the purchase prices for Walgreens' products that they paid.  Plaintiff Quinn and the Connecticut Class have also or alternatively been damaged because Walgreens is able to and does charge more for the products it advertises as being capable of rebuilding cartilage, and independently because Plaintiff and members of the Class paid more for Defendant's products than for other products containing the same or similar ingredients that do not represent that they will "rebuild cartilage."

31.     Punitive damages should be awarded to Plaintiff Quinn and the Connecticut Class because Defendant's conduct as detailed herein reveals a reckless indifference to the rights of consumers and an intentional, wanton and malicious violation of those rights motivated by greed and un-tempered by fairness or compassion, even for the vulnerable consumers they victimize.

32.     By reason of the foregoing, Defendant has violated CUTPA and is liable to Plaintiff Quinn and the Connecticut Class, pursuant to Conn. Gen. Stat. Ann. § 42-110a *et seq.*, for the damages that they have suffered as a result of Defendant's actions, the amount of such

damages to be determined at trial, and for an award of punitive damages, attorneys' fees and costs, and injunctive relief precluding Defendant from continuing its unfair practices.

**THIRD CAUSE OF ACTION**
**(Breach of Express Warranty on Behalf of Both Classes)**

33.     Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1-21 above as if fully set forth herein.

34.     The representation and warranty that Walgreens glucosamine and chondroitin products "rebuild cartilage" is an affirmation of fact or promise by Defendant.

35.     The natural tendency of Walgreens' promise that its products "rebuild cartilage" is to induce buyers such as Mr. Ducorsky and Ms. Quinn to purchase Defendant's products.

36.     Plaintiffs and the New York and Connecticut Classes relied on Defendant's promise that its products "rebuild cartilage" when they purchased those products.

37.     Plaintiffs and each member of the New York and Connecticut Classes formed a contract with Defendant at the time Plaintiffs and the other members of the New York and Connecticut Classes purchased the Walgreens' products.  The terms of that contract include the promises and affirmations of fact made by Defendant on its product labels.  The product labeling constitutes an express warranty which became part of the basis of the bargain.  All conditions precedent to Defendant's liability under this contract have been performed by Plaintiffs and members of the New York and Connecticut Classes.

38.     Defendant breached the terms of this contract, including the express warranties, with Plaintiffs and the Classes by not providing a product that could "rebuild cartilage."

39.     As a result of Defendant's breach of its contract and warranties, Plaintiffs and the New York and Connecticut Classes have been damaged in the amount of the purchase price of Walgreens' products.

15

## FOURTH CAUSE OF ACTION
### (Unjust Enrichment on Behalf of Both Classes)

40.     Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1-21 above as if fully set forth herein.

41.     By marketing that its products "rebuild" cartilage when they are incapable of doing so, Defendant has unjustly enriched itself at the expense of Plaintiffs and the other members of the New York and Connecticut Classes and Defendant is required, in equity and good conscience, to compensate Plaintiffs and the New York and Connecticut Classes for the damages that they have suffered as a result of Defendant's actions.

42.     By reason of the foregoing, Defendant is liable to Plaintiffs and the other members of the New York and Connecticut Classes for the damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against Defendant as follows:

1.     Certifying this action as a class action as soon as practicable, with the New York Class and Connecticut Class as defined above;

2.     On Plaintiffs' First Cause of Action, awarding against Defendant the damages that Plaintiffs and the other members of the New York Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, trebled, and ordering appropriate injunctive relief, including a prohibition against Defendant's use of the false promise that its products "rebuild cartilage";

16

3.      On Plaintiff Quinn's Second Cause of Action, awarding against Defendant the damages that Plaintiff Quinn and the other members of the Connecticut Class have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, and for an award of punitive damages, attorneys' fees and costs, and injunctive relief precluding Defendant from continuing its unfair practices;

4.      On Plaintiffs' Third and Fourth Cause of Action, awarding against Defendant the damages that Plaintiffs and the other members of the New York and Connecticut Classes have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial;

5.      Awarding Plaintiffs and the New York and Connecticut Classes interest, costs and attorneys' fees; and

6.      Awarding Plaintiffs and the New York and Connecticut Classes such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure Rule 38, Plaintiffs demands a trial by jury.

Dated: White Plains, New York
November 9, 2012

Respectfully Submitted,

**MEISELMAN, DENLEA,
PACKMAN, CARTON &
EBERZ P.C.**

By: _____

Jeffrey I. Carton
D. Greg Blankinship
Scott D. Laton
1311 Mamaroneck Avenue
White Plains, New York 10605
Tel: (914) 517-5000
Fax: (914) 517-5055
jcarton@mdpcelaw.com
gblankinship@mdpcelaw.com
slaton@mdpcelaw.com

*Attorneys for Plaintiffs*

18