UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROSEMARY QUINN, ALAN
DUCORSKY, LUIS GUILIN, and KAY
ECKLER, on behalf of themselves and all
others similarly situated,

                        Plaintiffs,

v.

WALGREEN CO., WAL-MART STORES,
INC.,  and PERRIGO COMPANY OF
SOUTH CAROLINA, INC.,

                        Defendants.

Civil Action No. 7:12-CV-8187-VB

FIRST AMENDED CLASS
ACTION COMPLAINT

---

       Plaintiffs, by and through their counsel, respectfully file this First Amended Class Action Complaint on behalf of themselves and all other similarly situated individuals who have purchased a joint health dietary supplement containing glucosamine and/or chondroitin manufactured by Defendant Perrigo Company of South Carolina, Inc. ("Perrigo") and distributed by any retail store in the United States, including Defendant Walgreen Co. ("Walgreens") and Defendant Wal-Mart Stores, Inc. ("Wal-Mart").

## NATURE OF THE CASE

       1.      It is an inescapable but unfortunate fact that our joints degenerate as we get older. The basic human compulsion to regain what has been lost, coupled with the acute pain that can be associated with arthritic or otherwise damaged joints, has created an opportunity for marketers to sell joint-relief supplements with the false and unsubstantiated, but nonetheless enticing, promise to "rebuild cartilage," "lubricate joint," and "improve joint comfort."

2.     Perrigo manufactures dietary supplements which contain glucosamine and/or chondroitin ("Glucosamine Supplements") and distributes them to retailers throughout the United States, including Walgreens and Wal-Mart.  Retailers then market the Glucosamine Supplements under their own brand as products that will help, among other health claims, rebuild cartilage.  It is physically and biologically impossible to "rebuild" cartilage that has been lost or damaged.

3.     Walgreens, Wal-Mart and other retailers sell Perrigo manufactured products throughout the United States by taking advantage of consumers' reasonable but unattainable desire to reverse the damage done to their cartilage.  This suit seeks redress on behalf of all consumers in the United States that purchased a Glucosamine Supplement from November 2, 2005 to the present.

## PARTIES

4.     Plaintiff Rosemary Quinn resides in Katonah, New York in Westchester County. Approximately in November 2011, Plaintiff Quinn purchased a Glucosamine Supplement containing glucosamine and chondroitin at a Walgreens in New York that included the prominent representation on the front of the label that the supplement would "rebuild cartilage." Approximately in November 2011, Plaintiff Quinn also purchased a Glucosamine Supplement containing glucosamine and chondroitin at a Walgreens in Connecticut that included the prominent representation on the front of the label that the supplement would "rebuild cartilage." In both instances, Ms. Quinn read and reviewed that representation on the label when she purchased the supplements.  Ms. Quinn subsequently consumed the Glucosamine Supplements, but she did not obtain the promised benefits.

2

5.      Plaintiff Alan Ducorsky resides in Island Park, New York in Nassau County.  In or around the fall of 2011, Plaintiff Ducorsky purchased a Glucosamine Supplement containing glucosamine and chondroitin at a Walgreens location in New York that included the prominent representation on the front of the label that the supplement would "rebuild cartilage."  Mr. Ducorsky read and reviewed that representation on the label when he purchased the supplement.  Mr. Ducorsky subsequently consumed the Glucosamine Supplement, but he did not obtain the promised benefits.

6.      Plaintiff Luis Guilin resides in Calexico, California.  On or around spring 2011, Plaintiff Guilin purchased a Glucosamine Supplement containing glucosamine and chondroitin at a Walgreens location in California that included the prominent representation on the front of the label that the supplement would "rebuild cartilage," "lubricate joints," and "improve joint comfort."  Mr. Guilin read and reviewed those representations on the label when he purchased the supplement.  Mr. Guilin subsequently consumed the Glucosamine Supplement, but he did not obtain the promised benefits.

7.      Plaintiff Kay Eckler resides in San Diego County, California.  In approximately December 2011, Plaintiff Eckler purchased a Glucosamine Supplement at a Wal-Mart store in Oceanside, California that included a prominent representation on the front of the label that the supplement would "support joint comfort," "rebuild cartilage" and "lubricate joints."  Ms. Eckler read and reviewed those representations on the label when she purchased the supplement.  Ms. Eckler subsequently consumed the Glucosamine Supplement, but she did not obtain the promised benefits.

8.      Defendant Perrigo Company of South Carolina, Inc. is a Michigan corporation with its principal place of business in Greenville, South Carolina.

3

9.      Defendant Walgreen Co. is an Illinois corporation with its principal place of business in Deerfield, Illinois.

10.     Defendant Wal-Mart Stores, Inc. is a Delaware corporation with a principal place of business in Bentonville, Arkansas.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).  Jurisdiction is proper because (1) the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interests and costs and (2) the named Plaintiffs and Defendants are citizens of different states.  28 U.S.C. § 1332(d)(2)(A).

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred within this judicial district, and because Defendants have marketed and sold the products at issue in this action within this judicial district and have done business within this judicial district.

## GENERAL ALLEGATIONS

13.     Millions of adults in the United States live with arthritis, a disease involving the breakdown of cartilage in joints, or other orthopedic disorders in which cartilage in joints is broken down over time and causes bones in those joints to grind against each other.  Cartilage normally protects a joint, allowing it to move smoothly, and also absorbs shock when pressure is placed on the joint.  Without normal amounts of cartilage, the bones in the joint rub together, causing pain, swelling and stiffness.  These conditions are often extremely painful and result in limitations on an individual's range of motion, and most often impact elderly persons.

14.     In response to the desperation of consumers suffering from painful and debilitating arthritic and other orthopedic conditions, dietary supplement manufacturers and

retailers have rolled out a variety of products promising joint relief from chronic pain.  In a push for more market share, some manufacturers and retailers promised that glucosamine and chondroitin supplements can help "support joint comfort," "rebuild cartilage," and "lubricate joints."

15.     Defendant Perrigo, the seller of a wide variety of vitamin, nutritional and dietary supplement products, is one such company.  One of Perrigo's most successful product lines is promoted as a joint supplement that contains glucosamine and chondroitin.  These joint supplements are sold at Walgreens, Wal-Mart and other retail stores throughout the United States using retailer-branded labels that prominently claim, among other things, to "support joint comfort," "rebuild cartilage," and "lubricate joints."

16.     Glucosamine is an amino sugar present in cartilage.  Glucosamine supplements are produced commercially from crustacean exoskeletons, and are one of the most common, non-vitamin dietary supplements sold in the United States.  Chondroitin is a sulfated glycosaminoglygan composed of a chain of alternating sugars.  Chondroitin sulfate is a structural component of cartilage and provides resistance to compression.  There is no competent scientific evidence that either of these ingredients, or any other ingredient, contained in the Glucosamine Supplements, alone or in combination, are capable of rebuilding cartilage that has been damaged or destroyed.

17.     Defendants' statement that the Glucosamine Supplements build cartilage is false and misleading.  There is no scientifically sound study demonstrating that the ingredients in Defendants' products can rebuild cartilage.  In fact,  numerous studies have demonstrated that, neither glucosamine, chondroitin, or any of the other  ingredients in Defendants' Glucosamine Supplements actually rebuild cartilage, support joint comfort or lubricate joints:

a.      In February 2004, a Supplement to the American Journal of
Orthopedics published an article entitled "Restoring Articular Cartilage in
the Knee."  The authors concluded that adult cartilage cannot be
regenerated because it is not vascularized, meaning that blood does not
flow to damaged cartilage which prevents any mechanism for rebuilding.

b.      In February 2006, the New England Journal of Medicine published
a report on a double blind study addressing in part the efficacy of
ingesting glucosamine hydrochloride 1500mg.  Clegg, et al.  Glucosamine,
Chondroitin Sulfate, and the Two in Combination for Painful Knee
Osteoarthritis.  New Eng. J. Med. 354:795-808 (Feb. 2006).  The study
sponsored by the NIH, the largest to date regarding glucosamine and
chondroitin,  concluded that there was no showing that these supplements,
alone or in combination, were effective in relieving the symptoms of
osteoarthritis.

c.      In February 2008, the Annals of Internal Medicine published a
study entitled, "Effect of Glucosamine Sulfate on Hip Osteoarthritis:  a
Randomized Trial."  Annals of Internal Medicine 2008 Feb 19;148(4):
268-277.  The article published the results of a study which examined
whether glucosamine sulfate has an effect on the symptoms and structural
progression of hip osteoarthritis during two years of treatment; the
conclusion reached from the study was that glucosamine sulfate was no
better than placebo in reducing symptoms and progression of hip
osteoarthritis.

d.      In October 2008, the American College of Rheumatology's

Journal, Arthritis & Rheumatism published a report on a double blind

study conducted at multiple centers in the United States, examining joint

space width loss with radiograph films in patients who were treated with

glucosamine hydrochloride.  The authors concluded that after two years of

treatment with this supplement, the treatment did not demonstrate a

clinically important difference in joint space width loss.  Sawitzke et al.,

Glucosamine for Pain in Osteoarthritis: Why do Trial Results Differ?,

Artritis Rheum., 58:3183-3191 (2008).

e.      In March 2009, Harvard Medical School published a study

conclusively proving that the ingestion of glucosamine could not affect the

growth of cartilage.    The authors went on to conduct a study of subjects

ingesting 1500 mg of glucosamine, and proved that only trace amounts of

glucosamine entered the human serum, far below any amount that could

possibly affect cartilage.  Moreover, even those trace amounts were

present only for a few hours after ingestion.  The authors also noted that a

1986 study had found no glucosamine in human plasma after ingestion of

four times the usual 1500 mg of glucosamine chloride or sulphate.  Silbert,

Dietary Glucosamine Under Question, Glycobiology 19(6):564-567

(2009).

g.      In October 2008, the journal Arthritis and Rheumatism published

an article entitled, "The Effect of Glucosamine and/or Chondroitin Sulfate

on the Progression of Knee Osteoarthritis."  The authors reported on the

7

results of a 24-month, double-blind, placebo-controlled study, sponsored

by the NIH, which demonstrated that there were no statistically significant

differences in progressive loss of joint space width for subjects taking

glucosamine and chondroitin, either or alone or in combination,  versus

placebo.  Sawitzke, et al., The Effect of Glucosamine and/or Chondroitin

Sulfate on the Progression of Knee Osteoarthritis, Arthritis and

Rheumatism, 58(10): 3183-3191 (2008).

     h.     In June 2011, the Journal of Pharmacy & Pharmaceutical Sciences

published an article entitled, "The Glucosamine Controversy; A

Pharmacokinetic Issue."  The authors concluded that regardless of the

formulation used, no or marginal beneficial effects were observed as a

result of low glucosamine bioavailability.  Aghazadeh-Habashi and

Jamali, The Glucosamine Controversy; A Pharmacokinetic Issue, Journal

of Pharmacy & Pharmaceutical Sciences, 14(2): 264-273 (2011).

18.     To date, there are only two studies, both of which are more than a decade old,

purporting to claim that the ingestion of glucosamine can affect the growth or deterioration of

cartilage, both sponsored by a glucosamine supplement manufacturer and using a patented

formula by that manufacturer (Rottapharm): Pavelka et. al. Glucosamine Sulfate Use and Delay

of Progression of Knee Osteoarthritis, Arch. Intern. Med., 162: 2113-2123 (2002) and Reginster

et. al. Long-term Effects of Glucosamine Sulphate On Osteoarthritis Progress: A Randomised,

Placebo-Controlled Clinical Trial, Lancet, 357: 251-6 (2001).  As noted in the April 2009

Journal of Orthopaedic Surgery article, the methodologies in those studies had inherently poor

reproducibility, and even minor changes in posture by the subjects during scans could cause false

apparent changes in cartilage.  The authors of the Journal of Orthopaedic Surgery article explained the manufacturer-sponsored studies by noting that industry-sponsored trials report positive effects more often than did nonsponsored trials and more find pro-industry results.  No reliable scientific medical study has shown that glucosamine and chondroitin, alone or in combination, have a structure modifying effect that will rebuild cartilage that has broken down or worn away.

19.     Defendants thus sell their glucosamine and chondroitin line of products based upon false representations.  In fact, it is medically impossible to rebuild cartilage that has been damaged or destroyed simply by taking glucosamine and/or chondroitin supplements, however formulated.

20.     Plaintiffs purchased and consumed the Glucosamine Supplements because they believed, based upon the label, that the products would rebuild cartilage.  Their belief that the product would "rebuild cartilage" in their joints was reasonable because Defendants, as manufacturers, retailers and distributors of dietary supplements throughout the United States, have superior knowledge, skill and expertise (as compared to Plaintiffs) to appreciate the truth or falsity of the statement that the product can "rebuild cartilage."  Plaintiffs reasonably relied upon the statement that the supplements would "rebuild cartilage" when they purchased the product.

21.     Plaintiffs would not have bought the Glucosamine Supplements if they had known that they would not "rebuild cartilage."

22.     Plaintiffs were injured because they purchased a product that was incapable of performing as promised.  Moreover, Defendants are able to, and do, charge more for their Glucosamine Supplements than they would otherwise be able to because Defendants represent that their supplements will "rebuild cartilage."  In addition, this misrepresentation allows

9

Defendants to charge more for their supplements than other brands containing similar amounts of glucosamine, chondroitin and the other ingredients contained in Defendants' joint supplements. This price premium is a direct result of Defendants' misrepresentation that their products will "rebuild cartilage."

## CLASS ACTION ALLEGATIONS

23.     Plaintiffs bring this action on their own behalf and additionally, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of a class all persons who purchased in the United States a Glucosamine Supplement manufactured by Perrigo during the period of November 2, 2005 to the present (the "Class").  Excluded from the Class are the Defendants and any parent, subsidiary, or affiliate of the Defendants.

24.     This action is brought as a class action for the following reasons:

a.      The Class consists of millions of persons and are therefore so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

b.      There are questions of law or fact common to the Class which predominate over any questions affecting only individual members, including:

i.      whether the representations made by Defendants regarding their Glucosamine Supplements were or are false, misleading, or likely to deceive;

ii.      Whether Plaintiffs and the Class members were deceived by Defendants' representations regarding their Glucosamine Supplements;

iii.      Whether the alleged conduct constitutes violations of the laws asserted herein;

iv.      Whether Plaintiffs and the Class members have been injured and the proper measure of their losses as a result of those injuries; and

10

v.      Whether Plaintiffs and the Class members are entitled to injunctive, declaratory or other equitable relief;

c.      The claims asserted by Plaintiffs are typical of the claims of the members of the Class;

d.      Plaintiffs will fairly and adequately protect the interests of the Class, and Plaintiffs have retained attorneys experienced in class and complex litigation, including class action litigation involving state statutes protecting consumers from deceptive acts;

e.      Prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendants;

f.      Defendants have acted on grounds that apply generally to the Class, namely promoting the Glucosamine Supplements as supplements that "support joint comfort," "rebuild cartilage," and "lubricate joints" so that final injunctive relief prohibiting Defendants from continuing their deceptive practices is appropriate with respect to the Class as a whole; and

g.      A class action is superior to other available methods for the fair and efficient adjudication of the controversy, for at least the following reasons:

i.      Absent a class action, Class members as a practical matter will be unable to obtain redress, Defendants' violations of its legal obligations will continue without remedy, additional consumers will be harmed, and Defendants will continue to retain its ill-gotten gains;

ii.      It would be a substantial hardship for most individual members of the Class if they were forced to prosecute individual actions;

11

iii.     When the liability of Defendants has been adjudicated, the Court will be able to determine the claims of all members of the Class;

iv.     A class action will permit an orderly and expeditious administration of Class claims and foster economies of time, effort, and expense;

v.     The lawsuit presents no difficulties that would impede its management by the Court as a class action; and

vi.     Defendants have acted on grounds generally applicable to Class members, making class-wide monetary and injunctive relief appropriate.

### FIRST CAUSE OF ACTION
### (Violation of N.Y. General Business Law § 349)

25.     Plaintiffs Quinn and Ducorsky repeat and re-allege the allegations contained in Paragraphs 1-24 above as if fully set forth herein.

26.     Through their conduct described above, Defendants have engaged in deceptive acts and practices that resulted in injury to Plaintiffs and the other members of the Class.

27.     Representing that the Glucosamine Supplement rebuild cartilage, support joint comfort, or lubricate joints when they are incapable of doing so as a matter of medical and scientific fact and when there is no competent or reliable scientific evidence substantiating that claim, is deceptive, and has the capacity, tendency and effect of deceiving reasonable consumers who purchase the products.  Reasonable consumers would believe that Defendants' products rebuild cartilage, support joint comfort and lubricate joints based upon Defendants' misrepresentations that they could do so.

28.     Defendants' unfair or deceptive practices are a willing and knowing violation of N.Y. General Business Law § 349 because Defendants knew, or should have known, that their

products are incapable as a matter of scientific and medical fact of rebuilding cartilage and that their representation that their products "rebuild cartilage" was not substantiated or supported by competent and reliable scientific evidence.

29.     Plaintiffs and the Class have suffered an ascertainable loss of money or property as a result of Defendants' actions.  Plaintiffs and the Class have been damaged in the amount of the purchase prices for Defendants' products that they paid.  Plaintiffs and the Class have also or alternatively been damaged because Defendants are able to and do charge more for the products they advertise as being capable of rebuilding cartilage, and independently because Plaintiffs and members of the Class paid more for Defendants' products than for other products containing the same or similar ingredients that do not represent that they will "rebuild cartilage."

30.     By reason of the foregoing, Defendants have willfully and knowingly violated N.Y. Gen. Bus. Law § 349, and should be enjoined from representing that their products "rebuild" cartilage.  Defendants are also liable to Plaintiffs and the other members of the Class for the damages that they have suffered as a result of Defendants' actions, such damages to be determined at trial but not less than $50.00 for each purchase of Defendants' products, such damages to be trebled, plus attorneys' fees.

## SECOND CAUSE OF ACTION
### (Violation of Conn. Gen. Stat. Ann. § 42-110a *et seq*.)

31.     Plaintiff Quinn repeats and re-alleges the allegations contained in Paragraphs 1-24 above as if fully set forth herein.

32.     Through their conduct described above, Defendants have engaged in deceptive and unfair acts and practices in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. Ann. § 42-110a *et seq*. ("CUTPA").

13

33.     Plaintiff Quinn and the Class have suffered an ascertainable and substantial loss of money as a result of Defendants' actions, which could not be readily or easily avoided. Plaintiff Quinn and the Class have been damaged in the amount of the purchase prices for Defendants' products that they paid.  Plaintiff Quinn and the Class have also or alternatively been damaged because Defendants are able to and do charge more for the products they advertise as being capable of rebuilding cartilage, supporting joint comfort or lubricating joints and independently because Plaintiffs and members of the Class paid more for Defendants' products than for other products containing the same or similar ingredients that do not represent that they will "rebuild cartilage."

34.     By reason of the foregoing, Defendants have violated CUTPA and are liable to Plaintiff Quinn and the Class, pursuant to Conn. Gen. Stat. Ann. § 42-110a *et seq*., for the damages that they have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, and for an award of punitive damages, attorneys' fees and costs, and injunctive relief precluding Defendants from continuing their unfair practices.

### THIRD CAUSE OF ACTION
### (Violation of California Business & Professions Code § 17200, *et seq*.)

35.     Plaintiffs Guilin and Eckler repeat and re-allege the allegations contained in Paragraphs 1-24 above as if fully set forth herein.

36.     Through their conduct described above, Defendants have engaged in unlawful business practices in violation of the Unfair Competition Law, Business & Professions Code § 17200, *et seq*. ("UCL").

37.     The UCL prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising.  In the course of conducting business,

14

Defendants committed unlawful business practices by, *inter alia*, making the representations (which also constitute advertising within the meaning of §17200) and omissions of material facts, as set forth more fully herein, and violating Civil Code §§1572, 1573, 1709, 1711, 1770 and Business & Professions Code §§17200, *et seq.*, 17500, *et seq.*

38.     Defendants' actions constitute "unfair" business acts or practices because, as alleged above, Defendants engaged in false advertising, misrepresented and omitted material facts regarding the Glucosamine Supplements in their advertising campaign, including the products' packaging, and thereby offended an established public policy, and engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

39.     Plaintiffs Guilin and Eckler and the Class have been deceived by Defendants' material representations and omissions, which are described above.  This deception has caused harm to Plaintiffs and other members of the Class who each purchased a glucosamine and chondroitin supplement.  Plaintiffs and the other Class members have suffered injury in fact and lost money as a result of these unlawful, unfair, and fraudulent practices.

40.     Plaintiffs Guilin and Eckler, on behalf of themselves and the members of the Class and the public, seek restitution of all money obtained from Plaintiffs and the members of the Class collected as a result of unfair competition, an injunction prohibiting Defendants from continuing such practices, corrective advertising and all other relief this Court deems appropriate, consistent with Business and Professions Code § 17203.

### FOURTH CAUSE OF ACTION
**(Violation of the California Consumers Legal Remedies Act – Civil Code § 1750, *et seq.*)**

41.     Plaintiffs Guilin and Eckler repeat and re-allege the allegations contained in Paragraphs 1-24 above as if fully set forth herein.

42.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §1750, *et seq*. (the "CLRA").  Plaintiffs are "consumers" as defined by the California Civil Code §1761(d).  Defendants' Glucosamine Supplements are "goods" within the meaning of the CLRA.

43.     Defendants violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiffs and the Class which were intended to result in, and did result in, the sale of glucosamine and chondroitin supplements:

(5) Representing that [the Glucosamine Supplements] . . . [had] approval, characteristics, . . . uses [and] benefits . . . which [it does] not have . . .

* * *

(7) Representing that [the Glucosamine Supplements are] of a particular standard, quality or grade . . . if [they are] of another.

* * *

(9) Advertising goods . . . with intent not to sell them as advertised.

* * *

(16) Representing that [the Glucosamine Supplements have] been supplied in accordance with a previous representation when [they have] not.

44.     Defendants violated the CLRA by representing and failing to disclose material facts in their advertising campaign including the product labels and packaging, as described above, when it knew, or should have known, that the representations were false and misleading and that the omissions were of material facts it was obligated to disclose.

16

45.     Pursuant to California Civil Code §1782(d), Plaintiffs and the Class seek a Court order enjoining the above-described wrongful acts and practices of Defendants and for restitution.

46.     Pursuant to §1782 of the CLRA, by letter dated April 19, 2012, Plaintiffs Guilin and Eckler notified Defendants Walgreens and Wal-Mart in writing by certified mail of the particular violations of §1770 of the CLRA and demanded that Defendants rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to so act.

47.     Defendants failed to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to §1782 of the Act.  Therefore, Plaintiffs further seek actual, punitive and statutory damages.

48.     Defendants' conduct is fraudulent, wanton, and malicious.

**FIFTH CAUSE OF ACTION**
**(Unjust Enrichment)**

49.     Plaintiffs repeat and re-allege the allegations contained in Paragraphs 1-24 above as if fully set forth herein.

50.     By marketing that their products "rebuild" cartilage when they are incapable of doing so, Defendants have unjustly enriched themselves at the expense of Plaintiffs and the other members of the Class and Defendants are required, in equity and good conscience, to compensate Plaintiffs and the Class for the damages that they have suffered as a result of Defendants' actions.

17

51. By reason of the foregoing, Defendants are liable to Plaintiffs and the other members of the Class for the damages that they have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, plus attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against Defendants as follows:

1. Certifying this action as a nation-wide class action as soon as practicable, as defined above;

2. On Plaintiffs Quinn and Ducorsky's First Cause of Action, awarding against Defendants the actual and/or statutory damages that Plaintiffs and the other members of the Class have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, trebled, and ordering appropriate injunctive relief, including a prohibition against Defendants' use of the false promise that its products "rebuild cartilage";

3. On Plaintiff Quinn's Second Cause of Action, awarding against Defendants the damages that Plaintiff Quinn and the other members of the Class have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, and for an award of punitive damages, attorneys' fees and costs, and injunctive relief precluding Defendants from continuing its unfair practices;

4. On Plaintiffs Guilin and Eckler's Third Cause of Action, awarding against Defendants the damages that Plaintiffs and the other members of the Class have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, and for an award of punitive damages, attorneys' fees and costs, and injunctive relief precluding Defendants from continuing their unfair practices;

5.      On Plaintiffs Guilin and Eckler's Fourth Cause of Action, awarding against Defendants the damages that Plaintiffs and the other members of the Class have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial, and for an award of punitive damages, attorneys' fees and costs, and injunctive relief precluding Defendants from continuing their fraudulent practices;

6.      On Plaintiffs' Fifth Cause of Action, awarding against Defendants the damages that Plaintiffs and the other members of the Class have suffered as a result of Defendants' actions, the amount of such damages to be determined at trial;

7.      Awarding Plaintiffs and the Class interest, costs and attorneys' fees; and

8.      Awarding Plaintiffs and the Class such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure Rule 38, Plaintiffs demand a trial by jury.

Dated: White Plains, New York
      June 3, 2014

          Respectfully Submitted,

          **FINKELSTEIN, BLANKINSHIP,**
          **FREI-PEARSON & GARBER, LLP**
By: /s/ D. Greg Blankinship_____
          D. Greg Blankinship
          1311 Mamaroneck Avenue
          White Plains, New York 10605
          Tel: (914) 298-3281
          Fax: (914) 824-1561
          gblankinship@fbfglaw.com

          *Attorneys for Plaintiffs Rosemary Quinn*
          *and Alan Ducorsky*

          **BONNETT, FAIRBOURN, FRIEDMAN**
          **& BALINT, P.C.**
By:  /s/ Elaine A. Ryan_____
          Elaine A. Ryan (*pro hac vice* to be filed)
          2325 E. Camelback Rd., Suite 300
          Phoenix, Arizona 85016
          Telephone: 602-274-1100
          Fax: 602-798-5860

          *Attorneys for Plaintiff Kay Eckler*

          **STEWART M. WELTMAN LLC**
By:  /s/ Stewart Weltman_____
          Stewart Weltman (*pro hac vice*)
          53 W. Jackson Blvd. Suite 364
          Chicago, Il 60604
          Telephone: 312-588-5033
          (Of Counsel Levin Fishbein Sedran &
          Berman)

          *Attorneys for Plaintiff Luis Guilin*