UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROSEMARY QUINN, ALAN DUCORSKY,
LUIS GUILIN, KAY ECKLER, BRIAN
CALVERT, MARC GROUP, JOHN
GROSS, CHRISTOPHER NELSON, and
RANDY NUNEZ, on behalf of themselves
and all others similarly situated,

               Plaintiffs,

v.

WALGREEN CO., WAL-MART STORES,
INC., and PERRIGO COMPANY OF
SOUTH CAROLINA, INC.,

               Defendants.

Civil Action No. 7:12-CV-8187-VB

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES..................................................................................................... ii

I.      INTRODUCTION ........................................................................................................1

II.     BACKGROUND ..........................................................................................................2

        A.  Plaintiffs Allege That Defendant Made Deceptive Misrepresentations And
            Omissions Regarding Glucosamine Based Joint Health Dietary Supplements ...............2

        B.  Procedural History .........................................................................................3

        C.  Discovery And Settlement Negotiations.........................................................5

III.    SUMMARY OF SETTLEMENT TERMS....................................................................6

IV.     LEGAL STANDARDS .................................................................................................9

V.      THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ..........................10

        A.  The Settlement Is Procedurally Fair ..............................................................10

        B.  The Settlement Is Substantively Fair ..............................................................11

            1.  The Litigation Is Complex And Will Be Expensive And Lengthy...........11

            2.  The Current Stage of the Instant Litigation And The
                Discovery That Has Occurred Favors Final Approval ..............................12

            3.  There Are Risks in Establishing Liability and Damages..........................13

            4.  The Settlement Amounts Are Fair and Reasonable In Light Of All the Attendant
                Risks of Litigation ..............................................................14

VI.     NOTICE WAS CONDUCTED IN THE BEST PRACTICABLE MANNER .................15

VII.    THE CLASS SHOULD BE CERTIFIED.....................................................................16

VIII.   CONCLUSION...........................................................................................................17

# TABLE OF AUTHORITIES

**Cases**                                                                        **Page(s)**

*Cagan v. Anchor Sav. Bank FSB*,
   No. 88-3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) ........................................................ 14

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 .................................................................................................................. 10, 14

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001).................................................................................................. 9, 10

*In re Agent Orange Prod. Liab. Litig.*,
   818 F.2d 145 (2d Cir. 1987)..................................................................................................... 16

*In re Austrian and German Bank Holocaust Litis.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000)............................................................................... 9, 11, 12

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
   233 F.R.D. 306 (E.D.N.Y. 2006) ................................................................................................ 9

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ............................................................................................. 11

*In re Med. X-Ray*,
   No. 93-5904, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) ..................................................... 14

*In re Michael Milken and Associates Sec. Lit.*,
   150 F.R.D. 57 (S.D.N.Y. 1993) ............................................................................................... 14

*In re PaineWebber Ltd. Partnerships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ............................................................................................. 13

*In re Rite Aid Corp. Sec. Litig.*,
   146 F. Supp. 2d 706 (E.D. Pa. 2001) ...................................................................................... 14

*In re Vivendi Universal, S.A. Sec. Litig.*,
   242 F.R.D. 76 (S.D.N.Y.2007) ................................................................................................ 16

*Ingles v. Toro*,
   438 F. Supp. 2d 203 (S.D.N.Y. 2006)...................................................................................... 11

*Martens v. Smith Barney, Inc.*,
   181 F.R.D. 243 (S.D.N.Y. 1998) ............................................................................................. 13

*Plummer v. Chemical Bank*,
    668 F.2d 654 (2d Cir. 1982) .................................................................................... 13

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
    237 F.R.D. 26 (E.D.N.Y. 2006) ............................................................................. 16

*Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*,
    No. 01-11814, 2004 WL 1087261 (S.D.N.Y. May 14, 2004) ................................. 14

*Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ....................................................................................... 9

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982) ....................................................................................... 9

*Williams v. First National Bank*,
    216 U.S. 582 (1910) ................................................................................................. 9

## Statutes

13 Pa. Cons. Stat. Ann. § 2313 .................................................................................... 4

Bus. & Prof. Code §17200 *et seq.* ........................................................................... 3, 4

Bus. & Prof. Code §17500 *et seq.* ........................................................................... 3, 4

Connecticut Gen. Stat. Ann. §42-110a, *et seq.* ............................................................ 3

Del. Code Ann. Tit. 6 § 2-313 ..................................................................................... 5

Del. Code Ann. Tit. 6 § 2513 ...................................................................................... 5

Fla. Stat. §§ 501.201 *et seq.* ....................................................................................... 4

N.J. Stat. Ann. §§ 56:8-1 *et seq.* ................................................................................. 4

N.J. Stat. Ann. 12A:2-313 .......................................................................................... 4

New York General Business Law § 349 ...................................................................... 3

## Rules

Fed. R. Civ. P. 23 ............................................................................................... passim

Plaintiffs Rosemary Quinn, Alan Ducorsky, Luis Guilin, Kay Eckler, Brian Calvert, Marc Group, John J. Gross, Christopher Nelson, and Randy Nunez hereby submit this Memorandum of Law in Support of their Motion for Final Approval of the Class Action Settlement pursuant to the Federal Rules of Civil Procedure 23(a), (b)(3) and (e).

I.     **INTRODUCTION**

This Court should grant final approval of the proposed settlement of this consumer class action (the "Settlement").  Not only does the Settlement provide real and immediate value to members of the proposed Class, but it also provides substantial injunctive relief that will benefit existing and future customers by prohibiting Walgreen Co. ("Walgreens"), Wal-Mart Stores, Inc. ("Wal-Mart"), Supervalu, Inc. ("Supervalu"), and Perrigo Company of South Carolina, Inc. ("Perrigo") (collectively known as "Defendants") from making certain key misrepresentations.

The Settlement should also be approved because it was the product of arm's-length negotiations by experienced counsel.  The Settlement was only reached after extensive and hard-fought litigation, which included motion practice, substantial formal and informal discovery, more than six months of extensive settlement discussions, including multiple full-day mediations before two highly regarded neutral mediators, and numerous additional telephone conferences with the mediators and negotiating sessions between Settlement Class Counsel and Defendants' Counsel.  Attorneys from eight separate lawsuits have signed on to the Settlement.

Plaintiffs' goals in this consumer protection lawsuit were to end what they viewed as misleading representations regarding the benefits of glucosamine based joint health dietary supplements ("Covered Products"), and to provide monetary relief to consumers who purchased the supplements with the belief that they would receive such promised benefits.  The Settlement substantially achieves those goals without the risks inherent in continued litigation.  Thus,

Plaintiffs hereby apply for the entry of an order that will certify the proposed Class described in the Settlement Agreement (the "Class") and approve the Settlement.

II.     **BACKGROUND**

      **A.    Plaintiffs Allege That Defendant Made Deceptive Misrepresentations And Omissions Regarding Glucosamine Based Joint Health Dietary Supplements.**

Plaintiffs brought this action seeking redress for themselves and for consumers injured by Defendants' alleged misrepresentations that their glucosamine based dietary supplements provide joint health, when the vast weight of scientific evidence, from high quality clinical studies, have found that glucosamine and chondroitin (the primary active ingredients in the Covered Products) are no better than placebo with regard to joint health benefits. To that end, Plaintiffs allege that Defendants made misleading representations, contrary to their obligations under various state consumer protection laws.  First Amended Complaint ("1st Am. Comp."), ¶¶ 1-3.  The labels of the Covered Products state that the products, "help rebuild cartilage," "lubricate joints," and "help provide joint comfort."  *Id.*  Plaintiffs allege these representations are false and deceptive because, among other reasons, it is biologically impossible to rebuild cartilage that has been lost or damaged.  *Id.* at ¶19.  Plaintiffs allege that numerous large-scale, well-conducted clinical studies (including three sponsored and conducted by the National Institutes of Health) have found that – glucosamine hydrochloride and chondroitin sulfate (alone or in combination) are no better than placebo with respect to improved joint function,  joint cartilage rebuilding, or relief from joint discomfort.  *Id.* ¶17.  Defendants deny these allegations and contend that the challenged representations are neither false nor misleading because they are supported by numerous studies they claim have demonstrated the efficacy of glucosamine and chondroitin.

**B.    Procedural History**

On November 9, 2012, Plaintiffs Rosemary Quinn and Alan Ducorsky filed an action against Walgreens on behalf of New York and Connecticut classes of purchasers of Walgreens' Covered Products.  Plaintiffs asserted claims for violations of New York General Business Law § 349, Connecticut Gen. Stat. Ann. §42-110a, *et seq*., breach of express warranty, and unjust enrichment.  On August 7, 2013, the Court denied Defendant's motion to dismiss with respect to Plaintiffs' consumer protection and unjust enrichment claims. (Dkt. No. 31).

On November 1, 2011, Plaintiff Luis Guilin filed a class action in the Northern District of Illinois on behalf of a multi-state and California class of purchasers of Walgreens' Covered Products.  Plaintiff Guilin asserted claims for violations of California's Unfair Competition Law, Bus. & Prof. Code §17200 *et seq*., and violations of the Consumers Legal Remedies Act, Civil Code §1750 *et seq*.  The Court had not entered an order on Defendant's motion to dismiss when the matter was stayed as a result of this settlement.

On March 26, 2012, Plaintiff Kay Eckler filed a class action in the Southern District of California against Wal-Mart on behalf of a multi-state and California class of purchasers of Wal-Mart's Equate Glucosamine Chondroitin MSM Advanced Triple Strength.  Plaintiff Eckler asserted claims for violations of California's Unfair Competition Law, Bus. & Prof. Code §17200 *et seq*., California's False Advertising Law, Bus. & Prof. Code §17500 *et seq*., and violations of the Consumers Legal Remedies Act, Civil Code §1750 *et seq*.  The Court granted Defendant's motion to dismiss with leave to amend, and a second motion to dismiss the amended complaint was fully briefed and pending when the matter was stayed as a result of this settlement.

On March 15, 2013, Plaintiff Randy Nunez filed a class action in the Southern District of California against Supervalu, on behalf of a multi-state and California class of purchasers of

Equaline products, including Glucosamine Chondroitin Complex Triple Strength and Glucosamine Chondroitin Complex Advanced with MSM & Vitamin D.  Plaintiff Nunez asserts claims for violations of California's Unfair Competition Law, Bus. & Prof. Code §17200 *et seq*., the Consumers Legal Remedies Act, Civil Code §17500 *et seq*., and Breach of Express Warranty.  The Court has not yet entered an order on Defendant's motion to dismiss.

On August 12, 2013, Plaintiff Brian Calvert filed a class action in the Western District of Pennsylvania against Walgreens on behalf of a Pennsylvania class of purchasers of Walgreens' Glucosamine Products.  Plaintiff Calvert asserts claims for violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law and Breach of Express Warranty, 13 Pa. Cons. Stat. Ann. § 2313.  The Court denied Defendant's motion to dismiss.

On October 28, 2013, Plaintiff Marc Group filed a class action in the Southern District of Florida against Walgreens on behalf of a Florida class of purchasers of Walgreens' Glucosamine Products.  Plaintiff Group asserts claims for violations of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.*, and Breach of Express Warranty.  The Court has not yet entered an order on Defendant's motion to dismiss.

On November 1, 2013, Plaintiff John Gross filed a class action in the District of New Jersey against Walgreens on behalf of a New Jersey class of purchasers of Walgreens' Glucosamine Products.  Plaintiff Gross asserts claims for violations of New Jersey's Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1 *et seq*., and Breach of Express Warranty, U.C.C. § 2-313 (N.J. Stat. Ann. 12A:2-313).  The Court has not entered an order on Defendant's motion to dismiss.

On November 7, 2013, Plaintiff Christopher Nelson filed a class action in the District of Delaware against Walgreens on behalf of a Delaware class of purchasers of Walgreens'

Glucosamine Products.  Plaintiff Nelson asserts claims for violations of Delaware's Consumer Fraud Act, Del. Code Ann. Tit. 6 § 2513, and Breach of Express Warranty, U.C.C. § 2-313 (Del. Code Ann. Tit. 6 § 2-313).  The Court has not yet entered an order on Defendant's motion to dismiss.

### C.    Discovery And Settlement Negotiations

Following this Court's denial in part of Walgreens' motion to dismiss the *Quinn* Complaint, the parties agreed to attempt to negotiate a fair and reasonable settlement of all claims.  On December 12, 2013, the parties engaged in a full-day mediation in San Diego, California before Justice Howard Wiener.  A second mediation was held before Justice Wiener on January 14, 2014.  Justice Wiener continued to facilitate settlement discussions by telephone and e-mail, and by March 24, 2014, the counsel for Plaintiffs in the *Quinn, Guilin,* and *Eckler* actions and counsel for Defendants reached an agreement to settle all claims arising from all Actions.  Thereafter, counsel for Plaintiffs in the *Calvert*, *Group*, *Gross* and *Nelson* matters joined in further settlement discussions, which were assisted by Hon. Wayne R. Andersen (retired), acting as mediator appointed by the Court in the *Calvert* case.  Through those additional discussions, counsel for Defendants and Plaintiffs in the *Quinn, Guilin, Eckler, Calvert*, *Group*, *Gross*, *Nelson*, and *Nunez* actions reached the Settlement.

The litigation proceedings in each of the above cases were stayed with the preliminary approval of the Class Action Settlement motion.  Plaintiffs and Defendants in two actions began the discovery process by engaging in a Rule 26(f) Conference, Plaintiffs served Requests for Production and Interrogatories, and two courts entered Civil Case Management Plans after holding Initial Case Management Conferences.  Garber Dec. ¶ 6.  Defendants served formal responses to the discovery in *Calvert*.  The parties also engaged in informal discovery in connection with settlement negotiations, which included the number of potential class members, the total sales volume of Glucosamine

Products in the United States, and wholesale prices. Garber Dec. ¶ 7.   Moreover, Plaintiffs' counsel had done extensive pre-filing and post-filing investigation of the scientific evidence regarding the ingredients in Defendants' products, including the engagement of one of the foremost experts in this area.  Garber Dec. ¶ 3.

As a result of these efforts, both sides were able to enter into settlement negotiations with an informed view of the strengths and weaknesses of their respective cases, and with an informed basis for determining what form of monetary and injunctive relief would be reasonable and appropriate in the settlement context.  The proposed settlement is the result of many months of arm's-length and vigorous negotiations between experienced counsel, with the benefit of their clients' involvement, all of whom are thoroughly familiar with the issues involved in this action.

## III.    SUMMARY OF SETTLEMENT TERMS

Plaintiffs have weighed the costs and benefits to be obtained under the Settlement against the costs, risks and delays associated with the continued prosecution of this complex and time-consuming litigation and the likely appeals of any rulings in favor of either the Settlement Class or the Defendant.  As a result, Plaintiffs believe that the Settlement provides substantial benefits to the Class, and is fair, reasonable, adequate, and in the best interests of Plaintiffs and the Class. Against this backdrop, and in the interest of avoiding protracted and costly litigation, the parties have agreed to a proposed Settlement as described below:

The Settlement Class consists of all residents of the United States who purchased for personal use, and not resale or distribution, a Covered Product between November 1, 2005 and the date the Court preliminarily approved the settlement.  Defendants have agreed to pay a total of $2.8 million to settle the claims in this litigation.  Each Settlement Class Member who submits a valid and timely claim form will receive the actual purchase price for each and every Covered

Product for which that Settlement Class member submits a receipt evidencing proof of purchase as defined in the Settlement Agreement, with no cap or limit on the number of such claims a Settlement Class Member may make.  *See* Settlement Agreement p. 15.  Settlement Class members who do not have such proofs of purchase may make claims for up to eight purchases of Covered Products, for which they will receive $12.00 per purchase. *Id.*  If these payments exceed the Net Settlement Fund (which is the Settlement Fund less the monies used to pay notice and claim administration expenses, as well as Class Counsel's attorneys' fees and expenses and any incentive award to the Plaintiffs), the payments will be reduced pro rata, but if there are monies still available in the Net Settlement Fund, payment to each Settlement Class Member with proof of purchase will be tripled. *Id.* at pp. 15-16. If, after that, there are still leftover monies available in the Net Settlement Fund, payment to each Settlement Class Member who does not have proof of purchase will be doubled. *Id.* If, after that, there are still leftover monies available in the Net Settlement Fund, the remaining funds will be distributed pro rata to all claimants until the Net Settlement Fund is exhausted.  *Id.*

Perrigo has also agreed to make key changes to its labels on the Covered Products. There are two main product claims made by Defendants: (1) that they rebuild/renew cartilage; and (2) that they provide pain palliation through purported greater flexibility/mobility/ comfort.  For a period of twenty four (24) months commencing nine (9) months after the settlement is finally approved, Perrigo will: (i) remove all claims that the products "rebuild", "renew", "regrow", "grow", "add" or "regenerate" cartilage on the labels of the Covered Products; and (ii) with regard to the palliation claims, will include the language "individual results may vary" on the

labels of the Covered Products.[1]  *Id.* at pp. 16-17.  The Settlement Agreement provides a significant incentive for Defendants to keep the injunctive relief in place after the expiration of the 24-month period, because if they do they will not be subject to suit by the settling class members regarding new purchases. *Id.* at p. 19.

Thus, the Settlement Agreement provides value to Defendants' existing and future customers.  Existing customers can get monetary compensation and existing and future customers will benefit from the elimination of what Plaintiffs contend are false and misleading representations regarding the rebuilding/renewal of cartilage by Defendants' Products. These are real and tangible benefits to millions of consumers in the United States.

In addition, Perrigo will pay the costs of the notice provided and the administration of the Settlement from the Settlement Fund, up to $800,000.00, which included processing claim forms and requests for exclusion ("Administration Costs").  *Id.* at p. 20.

Perrigo agreed not to object to an application by Class Counsel for up to one third of the total Settlement Fund for attorneys' fees, costs and other litigation expenses, and to pay an award the Court approves up to that amount.  *Id.* at p. 23.  Defendants have also agreed to not object to the payment from the Settlement Fund of incentive awards to Named Plaintiffs Rosemary Quinn, Alan Ducorsky, Luis Guilin, Kay Eckler, Brian Calvert, Marc Group, John J. Gross, Christopher Nelson, and Randy Nunez in the amount of five thousand dollars ($5,000) each, in recognition of their time and effort in this action, subject to Court approval.  *Id.* at p. 24.

In return for having made these settlement benefits available to all Settlement Class Members, the Settlement Class Members' claims against Defendants should now be dismissed with prejudice and all Settlement Class Members (other than those who opt-out of the Settlement Class)

---

[1] This notice language takes into account that fact that there is a large placebo effect for these products.

will release and be permanently barred from pursuing any claims in accordance with the Settlement

Agreement. *See id.* at pp. 17-19.  The terms of the proposed settlement were fair and reasonable; the

notice period having now concluded, this Court should approve the Settlement.

## IV.    LEGAL STANDARDS

Strong judicial policy favors the settlement of class actions.  *See Weinberger v. Kendrick*,

698 F.2d 61, 73 (2d Cir. 1982) ("There are weighty justifications, such as the reduction of

litigation and related expenses, for the general policy favoring the settlement of litigation.")

(citing 3 Newberg, Class Actions § 5570c, at 479–80 (1977); *Williams v. First National Bank*,

216 U.S. 582, 595 (1910)).  "Class action suits readily lend themselves to compromise because

of the difficulties of proof, the uncertainties of the outcome, and the typical length of the

litigation.  There is a strong public interest in quieting any litigation; this is particularly true in

class actions."  *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006)

(citations omitted).

Courts assess proposed class action settlements to determine whether they are "fair,

reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  To do so, courts must determine whether

both the negotiating process leading to a settlement and the settlement itself are fair, adequate

and reasonable. *See D'Amato v. Deutsche Bank*, 235 F.3d 78, 85 (2d Cir. 2001).  Where a

settlement is the "product of arm's length negotiations conducted by experienced counsel

knowledgeable in complex class litigation," the negotiation enjoys a "presumption of fairness."

*In re Austrian and German Bank Holocaust Litis.*, 80 F. Supp. 2d 164, 173–74 (S.D.N.Y. 2000);

*see also Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

The Second Circuit has identified nine factors in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462–63 (2d Cir. 1974) that district courts should consider in evaluating a proposed class action settlement:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Each of these factors militates in granting final approval of the Settlement.

## V.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.      The Settlement Is Procedurally Fair

This Settlement, reached as a result of arm's-length negotiation after years of hard-fought litigation and mediation, meets the standard for procedural fairness.  In determining whether a settlement is procedurally fair, courts evaluate the "negotiating process, to ensure that the settlement resulted from arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests."  *D'Amato*, 236 F.3d at 85.

Here, experienced counsel represented Plaintiffs and the Class, and all of the parties were fully aware of the relevant facts and legal claims at issue in the litigation, as they were relatively narrow in scope.  In particular, Plaintiffs' Counsel were well positioned to evaluate the strengths and weaknesses of the Plaintiffs' claims owing to their review of the Covered Products' labels, their extensive experience and knowledge regarding the scientific and medical issues regarding the efficacy of glucosamine products, and their collective experience litigating cases against other manufacturers of glucosamine products, as well as consumer products class actions matters in

general.  The parties were able to evaluate the claims and reach a settlement before they, and the

Courts, incurred substantial time and resource costs, due to the fact that Plaintiffs' claims are based

on publicly available scientific studies and the labels of the Covered Products, rather than

information that is uniquely in Defendant's possession.  The parties efficiently and expeditiously

reached a fair and reasonable settlement during arms-length negotiations, without incurring

unnecessary costs.

   **B.**  **The Settlement Is Substantively Fair**

   The Second Circuit's *Grinell* factors guide this Court's decision as to whether it should

approve the Settlement.  "In finding that a settlement is fair, not every factor must weigh in favor

of settlement, rather the court should consider the totality of these factors in light of the

particular circumstances." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 138 (S.D.N.Y. 2010)

(internal quotation and citations omitted).  "The weight given to any particular factor will vary

based on the facts and circumstances of the case." *Ingles v. Toro*, 438 F. Supp. 2d 203, 211

(S.D.N.Y. 2006) (citing 7B Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal

Practice and Procedure: Civil § 1797.1, at 77 (3d ed. 2005)).

   **1.**  **The Litigation Is Complex And Will Be Expensive And Lengthy**

   The Settlement provides substantial immediate benefits to the Class while avoiding the

significant expenses and delays attendant to discovery and motion practice related to summary

judgment and class certification, not to mention trial and appeals.  Indeed, "[m]ost class actions

are inherently complex and settlement avoids the costs, delays and multitude of other problems

associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174

(S.D.N.Y. 2000).  Having to engage in motion practice with respect to the consumer protection

laws of seven states (New York, Connecticut, California, Pennsylvania, Florida, New Jersey, and Delaware) would be extremely time consuming, complex, and expensive.

Absent an approved settlement, the parties in all of the Actions will be forced to continue litigation, and the fact-intensive trials will burden the courts hearing those cases.  Any judgment will likely be appealed, extending the costs and duration of the litigation.  The Settlement Agreement, on the other hand, will result in prompt and equitable payments to the Settlement Class and important injunctive relief that will protect current Class members and future consumers of Defendants' products.  Thus, this factor weighs in favor of settlement.

### 2.    The Current Stage of the Instant Litigation And the Discovery That Has Occurred Favors Final Approval

The first-filed of the cases in this settlement was filed nearly three years ago, while Plaintiffs in many of the other cases have been litigating independently for months.  The legal issues have been thoroughly vetted through Defendants' aggressive motions to dismiss in most of the Actions.  Moreover, Plaintiffs' counsel and Defendants have engaged in formal and informal discovery in preparation for settlement negotiations.  In the mediations, as well, the parties exchanged briefs that cited the extensive clinical studies and scientific research upon which they rely, as well as other facts.  Plaintiffs' counsel conducted a thorough investigation of Plaintiffs' claims and conducted extensive research regarding the science of the effects of the Covered Products, including the engagement of one of the foremost authorities in this area.  In addition, the parties are not required to having previously engaged in extensive discovery before having a sufficient basis upon which to arrive at a fair and reasonable settlement.[2]  This is especially true

---

[2] *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) ("'To approve a proposed settlement, the Court need not find that the parties have engaged in extensive discovery . . . it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the Settlement.'

here.  Whether Defendants are liable does not turn on any documents or information uniquely in the possession and control of Defendants.  To the contrary, the essential issue here is whether the labels on the Covered Products promised health benefits that they cannot deliver.  The science regarding the efficacy of glucosamine and chondroitin is publicly available and not uniquely in Defendants' possession.  Further, Class Counsel in seven of the cases are currently counsel in numerous other glucosamine related litigation, and Class Counsel all have prior experience representing plaintiffs in glucosamine related litigations; therefore, they have a substantial understanding of the issues presented by this case.  Class Counsel is thus well positioned to evaluate the medical science regarding the health claims on the Covered Products' labels.  As a result, Plaintiffs did not require extensive discovery from Defendants to be able to adequately evaluate the settlement here.

### 3.    There Are Risks in Establishing Liability and Damages

The Settlement Agreement should be approved because, like any case, there are inherent risks in establishing liability and damages.   Indeed, "[l]itigation inherently involves risks."  *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997).

While Plaintiffs' counsel have, since the beginning of these actions, been confident their ability to prove their cases, that does always mean that a fact finder is going to find in their favor.  Thus, , the Settlement Agreement avoids the risks inherent in further litigation, and therefore this factor weighs in favor of final approval of the Settlement.

---

Additionally, 'the pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement  . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit.'") (citing *Plummer v. Chemical Bank*, 668 F.2d 654 (2d Cir. 1982) and quoting *Martens v. Smith Barney, Inc.,* 181 F.R.D. 243, 263 (S.D.N.Y. 1998)).

### 4.    The Settlement Amounts Are Fair and Reasonable In Light Of All the Attendant Risks of Litigation

The adequacy of a settlement amount offered should be judged "in light of the strengths and weaknesses of the plaintiff[s'] case." *In re Med. X-Ray*, No. 93-5904, 1998 WL 661515, at *5 (E.D.N.Y. Aug. 7, 1998).  That the settlement amount is less than the maximum potential recovery is not a barrier to approval.  *See Grinnell Corp.*, 495 F.2d at 455 n.2 ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.").[3]  Indeed, judging whether a settlement is reasonable "is not susceptible of a mathematical equation yielding a particularized sum." *In re Michael Milken and Associates Sec. Lit.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993).

Here, there is a broad range of potential recovery if the case were to be litigated to judgment by trial.  On the one hand, Plaintiffs could prevail on their claims and recover the total retail sales.  On the other hand, Defendants could prevail on their legal arguments to defeat liability entirely or defeat class certification, resulting in no recovery for Class members.  Given this broad range of possible damages, the Settlement Agreement provides a substantial recovery, including sizable refunds to consumers with and without documentation of their purchases, important injunctive relief for past and future consumers, and effective notice to the Class that falls well within the range that courts have traditionally found to be fair and adequate under the law.

Moreover, the fact that the Settlement Agreement provides for a prompt payment to claimants favors approval of the Settlement.  *See Teachers' Ret. Sys. of Louisiana v. A.C.L.N.,*

---

[3] *See also Cagan v. Anchor Sav. Bank FSB*, No. 88-3024, 1990 WL 73423, at *12 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement where maximum potential recovery was approximately $121 million). *See also In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically recovered "between 5.5% and 6.2% of the class members' estimated losses" (citation omitted))

*Ltd.*, No. 01-11814, 2004 WL 1087261, at *5 (S.D.N.Y. May 14, 2004) ("[T]he proposed Settlement provides for payment to Class members now, not some speculative payment of a hypothetically larger amount years down the road.  Given the obstacles and uncertainties attendant to this complex litigation, the proposed Settlement is within the range of reasonableness, and is unquestionably better than the other likely possibility – little or no recovery.") (Citing *In re "Agent Orange" Prod. Liab. Litig.,* 611 F.Supp. 1396, 1405 (E.D.N.Y. 1985) ("[M]uch of the value of a settlement lies in the ability to make funds available promptly.") (Modified on other grounds)).

Therefore, these factors weigh in favor of approving the Settlement Agreement.

## VI.   NOTICE WAS CONDUCTED IN THE BEST PRACTICABLE MANNER

Rule 23(c)(2)(B) requires that class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  The Rule also requires that any such notice clearly and concisely state in plain, easily understood language: the nature of the action; the definition of the class; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members under Rule 23(c)(3).  Fed. R. Civ. P. 23(b)(2)(B).

Here, Defendants published a notice of Class Settlement on various social media, web sites and print publications of broad and targeted circulation so that all potential Class members had adequate notice of the Class Settlement.  Indeed, "when class members' names and addresses may not be ascertained by reasonable effort, publication notice has been deemed adequate to

satisfy due process." *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 107

(S.D.N.Y.2007).[4]  The form of Notices approved by this Court provided all of the information

required under Rule 23(b)(2)(B), and they "fairly apprise[d] the prospective members of the class

of the pendency of the class action, the terms of the proposed settlement, and the options that are

open to them in connection with the proceedings, including the option to withdraw from the

settlement." *Reade-Alvarez v. Eltman, Eltman & Cooper*, *P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y.

2006).  The Notices also directed class members to an Internet website where they were able to

find further information, including the date of the fairness hearing, procedures for submitting a

claim form, and procedures for opting out or objecting to the settlement.

Heffler Claims Group, which administered the Class Notice, published the Publication

Notice as follows: (1) the Publication Notice was printed on a Sunday newspaper supplement

(Parade Magazine), inserted into more than 700 newspapers; (2) the Publication Notice was

published twice in People Magazine; (3) a banner advertising was posted on appropriately

selected websites, including Yahoo! Network, Prevention.com, AARP.com, Facebook, and

Xaxis; and (4) a press release was disseminated over PR Newswire, which was distributed

broadly to thousands of media outlets.  The Notice Plan was calibrated to provide broad and

effective dissemination of the notice to the consumers of the Covered Products.  The notice

having been properly executed, this Court should grant final approval of the Settlement.

## VII.    THE CLASS SHOULD BE CERTIFIED

For all of the reasons discussed above, the proposed class Settlement is fair, reasonable

and adequate, as this Court initially agreed in granting preliminary approval. The proposed

---

[4] *See also In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 169 (2d Cir. 1987) (holding that individual notice is not necessary for each of 2.4 million Vietnam veterans potentially exposed to Agent Orange where "no easily accessible list of veterans" existed, and "such a comprehensive list could [not] reasonably have been compiled.").

Settlement will result in substantial benefits to Class Members and was achieved as the result of informed, non-collusive and arms' length negotiations conducted by experienced counsel. For all of the foregoing reasons, Plaintiffs respectfully requests that the Court grant final approval of the parties' class action Settlement, and that the Court enter the proposed final approval order.

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court approve the Settlement and certify the Class.


Dated:      White Plains, New York
            November 18, 2014


                              **FINKELSTEIN, BLANKINSHIP,**
                              **FREI-PEARSON & GARBER, LLP**

                              By: */s/ Todd S. Garber*
                              Todd S. Garber
                              1311 Mamaroneck Avenue
                              White Plains, New York 10605
                              Telephone: -914-298-3281
                              Fax: 914-824-1561
                              tgarber@fbfglaw.com

                              **BONNETT, FAIRBOURN,**
                              **FRIEDMAN & BALINT, P.C.**
                              Elaine A. Ryan (*admitted pro hac vice*)
                              2325 E. Camelback Rd., Suite 300
                              Phoenix, Arizona 85016
                              Telephone: 602-274-1100
                              Fax: 602-798-5860
                              eryan@bffb.com

                              **CARLSON LYNCH LTD**
                              Edwin J. Kilepla, Jr.
                              R. Bruce Carlson
                              PNC Park
                              115 Federal Street, Suite 210
                              Pittsburgh, PA 15212
                              Telephone: 412-322-9243

Fax: 412-231-0246
ekilpela@carlsonlynch.com

**STEWART M. WELTMAN LLC**
**(Of Counsel Levin Fishbein Sedran &**
**Berman)**
Stewart M. Weltman, Esq.
53 W. Jackson Blvd. Suite 364
Chicago, Illinois 60604
Telephone: 312-588-5033
sweltman@weltmanlawfirm.com

*Representatives of Class Counsel*


**CARPENTER LAW GROUP**
Todd Carpenter
402 West Broadway, 29th Floor
San Diego, CA 92101
Telephone: (619) 756-6994

**PATTERSON LAW GROUP, APC**
James Patterson
402 West Broadway, 29th Floor
San Diego, CA 92101
Telephone: (619) 756-6990

*Additional Class Counsel*